No. 25-1787

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

JOHN DOE,
through his parents and next friends JIM DOE and JANE DOE,
*Plaintiff-Appellant,*

v.

STATE OF SOUTH CAROLINA, *et al.*,
*Defendant-Appellees.*

On Appeal from the United States District Court
for the District of South Carolina
Case No. 2:24-cv-06510
The Honorable Richard M. Gergel

**MOTION OF PLAINTIFF-APPELLANT JOHN DOE
FOR AN INJUNCTION PENDING APPEAL**

Linda Correia
Andrew Adelman
CORREIA & PUTH PLLC
1400 16th Street NW #450
Washington, DC 20036
(202) 602-6500
lcorreia@correiaputh.com

Alexandra Z. Brodsky
Sean Ouellette
Adele P. Kimmel
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
 (202) 797-8600
abrodsky@publicjustice.net

Counsel for Plaintiff-Appellant
*Additional Counsel on Next Page*

Joseph J. Wardenski*
WARDENSKI P.C.
134 West 29th Street, Suite 709
New York, NY 10001
(347) 913-3311
joe@wardenskilaw.com
*Application for admission forthcoming

Harper T. Segui
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC
825 Lowcountry Boulevard
Mount Pleasant, DC 29464
(919) 600-5000
hsegui@milberg.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ................................................................................... 1

BACKGROUND ..................................................................................... 2

I.    Factual Background ........................................................................ 2

II.   Procedural Background................................................................... 6

LEGAL STANDARD ............................................................................. 9

ARGUMENT ......................................................................................... 9

I.    John is likely to succeed on the merits of his claims ..................... 10

    A.    The proviso's restroom provision violates Title IX ............... 10

    B.    The proviso's restroom provision violates the Equal
           Protection Clause .................................................................. 13

    C.    *Grimm* is binding precedent .................................................. 17

II.   The proviso's restroom provision will irreparably harm John
        absent an injunction pending appeal ............................................ 20

III.  The balance of equities and public interest favor enjoining
        enforcement of the proviso's restroom provision ........................... 22

IV.  The Supreme Court's cert grant in *B.P.J.* does not undermine
        John's entitlement to an injunction............................................... 22

V.   This Court should not require John to post a bond ....................... 25

CONCLUSION ..................................................................................... 26

CERTIFICATE OF COMPLIANCE ...................................................... 28

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*B.P.J. ex rel. Jackson v. W. Va. State Bd. of Educ.*,
  98 F.4th 542 (4th Cir. 2024) ................................................. 8, 11, 12, 13

*Bethlehem Mines Corp. v. Henderson*,
  939 F.2d 143 (4th Cir. 1991) ................................................................. 24

*C.G. ex rel. P.G. v. Saucon Valley Sch. Dist.*,
  571 F.Supp.3d 430 (E.D. Pa. 2021) ............................................. 21615

*Fitzgerald v. Barnstable Sch. Comm.*,
  555 U.S. 246 (2009) .............................................................................. 17

*Grimm v. Gloucester County School Board,*
  972 F.3d 586 (4th Cir. 2020) ....................................................... *passim*

*Grimmett v. Freeman*,
  No. 22-1844, 2022 WL 3696689 (4th Cir. Aug. 25, 2022) .................... 9

*H.B. Rowe Co. v. Tippett*,
  615 F.3d 233 (4th Cir. 2010) ................................................... 14, 15, 16

*Horner v. Ky. High Sch. Athletic Ass'n*,
  43 F.3d 265 (6th Cir. 1994) ................................................................. 11

*K.C. v. Individual Members of Med. Licensing Bd.*,
  121 F.4th 604 (7th Cir. 2024) .............................................................. 18

*Leaders of a Beautiful Struggle v. Baltimore Police Dep't*,
  2 F.4th 330 (4th Cir. 2021) ........................................................... 20, 22

*League of Women Voters of N.C. v. North Carolina*,
  769 F.3d 224 (4th Cir. 2014) ............................................................... 10

*McClellan v. Young*,
  421 F.2d 690 (6th Cir. 1970) ............................................................... 24

ii

*Md. Dep't. of Hum. Res. v. U.S. Dep't. of Agric.*,
  976 F.2d 1462 (4th Cir. 1992) ............................................................ 25

*Miss. Univ. for Women v. Hogan*,
  458 U.S. 718 (1982) ........................................................................... 14

*Multi-Channel TV Cable Co. v. Charlottesville Quality Cable
  Operating Co.*,
  22 F.3d 546 (4th Cir. 1994) ............................................................... 20

*Omega World Travel, Inc. v. Trans World Airlines*,
  111 F.3d 14 (4th Cir. 1997) ............................................................... 23

*Peltier v. Charter Day Sch., Inc.*,
  37 F.4th 104 (4th Cir. 2022) .............................................................. 11

*Qingyun Li v. Holder*,
  666 F.3d 147 (4th Cir. 2011) ............................................................. 17

*Roe v. Dep't of Def.*,
  947 F.3d 207 (4th Cir. 2020) .............................................................. 18

*Schwab v. Sec'y, Dep't of Corr.*,
  507 F.3d 1297 (11th Cir. 2007) .......................................................... 24

*Short v. Hartman*,
  87 F.4th 593 (4th Cir. 2023) .............................................................. 17

*Tandon v. Newsom*,
  593 U.S. 61 (2021) ......................................................................... 9, 10

*Taylor v. Grubbs*,
  930 F.3d 611 (4th Cir. 2019) .............................................................. 18

*United States v. Collins*,
  415 F.3d 304 (4th Cir. 2005) .............................................................. 24

*United States v. Hunt*,
  123 F.4th 697 (4th Cir. 2024) ............................................................ 17

*United States v. Skrmetti*,
  145 S. Ct. 1816 (2025) ......................................................... 17, 18, 19

*United States v. Virginia,*
    518 U.S. 515 (1996) ..................................................................... 14

*West Virginia v. B. P. J.,*
    2025 WL 1829164 (2025) (No. 24-43) ................................... 8, 22

*Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.,*
    858 F.3d 1034 (7th Cir. 2017) ................................................ 14

*Wise v. Circosta,*
    978 F.3d 93 (4th Cir. 2020) ..................................................... 9

*Yong v. INS,*
    208 F.3d 1116 (9th Cir. 2000) ................................................ 24

**Statutes, Bills, and Constitutional Provisions**

20 U.S.C. § 1681 ............................................................................ 2

20 U.S.C. § 1681(a) ..................................................................... 12

20 U.S.C. § 1687 .......................................................................... 11

H. 4025, Appropriation Bill 2025-2026 (Act No. 69, 2025 S.C. Acts) ......................................................................................... 4

H. 4025, Appropriation Bill 2025-2026, Part IB § 1.114 (Act No. 69, 2025 S.C. Acts) ........................................................... 4

H. 5100, Appropriation Bill 2024-2025, Part IB § 1.120 (Act No. 226, 2024 S.C. Acts) ......................................................... 3

S.C. Code Ann. § 11-9-80 (2024) ................................................ 3

S.C. Code Ann. § 59-3-30 (1976) .............................................. 11

S.C. Code Ann. § 59-5-65 (1976) .............................................. 12

iv

## INTRODUCTION

Five years ago, this Court held that schools may not ban transgender students from restrooms that match their gender identities. Yet, since last summer, South Carolina has required its public schools to do exactly that. As a result, John Doe has already missed out on nearly all of his eighth-grade year. And, without an injunction, he will face discrimination, including, likely, discipline, when he returns to school for ninth grade next month. Nevertheless, the district court declined to rule on John's motion for a preliminary injunction, filed last fall. When John renewed that request, the district court denied it—not on the merits, but because the court suspected the Supreme Court might disturb Fourth Circuit precedent in the next year, and wanted to wait to see. That delay, though, would deprive John of yet another year of equal access to education.

Accordingly, under Federal Rule of Appellate Procedure 8(a)(2) and Local Rule 8, John now moves for an injunction pending appeal. John asks this Court to enjoin the defendants from enforcing or complying with the ban or any similar policy during the pendency of this appeal in a manner that restricts John's ability to access boys' restrooms in South

Carolina public schools. John respectfully requests relief before the new academic year starts on August 13, 2025. The defendants received notice of this motion and intend to oppose it.

## BACKGROUND

### I.    Factual Background

1. In 2020, this Court decided *Grimm v. Gloucester County School Board,* a Title IX and Equal Protection case brought by a transgender boy whose Virginia school forbade him from using boys' restrooms. 972 F.3d 586 (4th Cir. 2020). *Grimm* held that, if a school bans transgender students from sex-specific restrooms that match their gender identity—what this brief will refer to as "gender-appropriate restrooms"—it violates both Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, which prohibits sex discrimination in education, and the Equal Protection Clause of the U.S. Constitution. *See* 972 F.3d at 606-19. *Grimm* also recognized that, when transgender students are excluded from gender-appropriate restrooms, they predictably and regularly experience significant harms, with potential lifelong consequences. *See id.* at 617-18. These include medical complications, such as urinary tract infections, missed

class time, and substantial emotional, psychological, and dignitary injuries. *See id.*; *accord* A115-117.

2. The South Carolina legislature knew about *Grimm*. Yet, since last summer, it has openly flouted that decision by requiring schools to exclude transgender students from gender-appropriate restrooms.

First, after multiple unsuccessful attempts to codify it as an independent statute, South Carolina included this ban in its budget for Fiscal Year 2024-2025, which began July 1, 2024. *See* H. 5100, Appropriation Bill 2024-2025, Part IB § 1.120 (Act No. 226, 2024 S.C. Acts), https://perma.cc/3SXF-8JPG [hereinafter "Proviso 1.120"]; S.C. Code Ann. § 11-9-80 (2024); *see* A019-021. The law, called Proviso 1.120, forbade transgender students from using restrooms that aligned with their gender identities, and promised to withhold state funding from South Carolina public K-12 schools that violated that ban. *See* Proviso 1.120.

Legislators advocating for the proviso and its predecessor bills justified them on the basis that, in their view, transgender boys are not really boys and transgender girls are not really girls. *See, e.g.*, A052, A062. Without evidence, other legislators vaguely cast transgender students as "crazy" and as threats to non-transgender classmates. *See, e.g.*, A053.

3

When considering the proviso, the legislature did not hear from "the public" or "medical professionals." A049. It did, however, hear repeated warnings that its ban would violate *Grimm*. A046-049.

After the proviso passed, the South Carolina School Boards Association advised its members that the ban "conflicts with federal law," citing *Grimm*. A224. Yet the South Carolina Department of Education issued a series of memos that made clear it would enforce the proviso should any school districts defy its directive to discriminate against transgender students. A070-071, A073, A076-077.

South Carolina has now renewed the ban for Fiscal Year 2025-2026. The ban contained in the new budget is identical to last year's except that it is now called Proviso 1.114. *See* H. 4025, Appropriation Bill 2025-2026, Part IB § 1.114 (Act No. 69, 2025 S.C. Acts), https://perma.cc/3RJ3-AV8L [hereinafter "Proviso 1.114"]; A281-282. This renewed ban took "effect July 1, 2025." *See* H. 4025, Appropriation Bill 2025-2026 (Act No. 69, 2025 S.C. Acts), https://perma.cc/3RJ3-AV8L.

3. The proviso inflicts serious harm on the estimated 3,000 transgender students who attend public school in South Carolina. A110-117. One of those students is John Doe, who lives with his parents in

Berkeley County. A169. John is transgender: Although John was as-
signed female at birth, he is a boy, his gender identity is male, and he
identifies and presents as male in all aspects of his life. A169.[1]

John started the 2024-2025 academic year as an eighth-grade stu-
dent at Cane Bay Middle School, part of Berkeley County School District.
A170. In the fall 2024 semester, while at Cane Bay, John used boys' re-
strooms. A170. No students complained. A170-171. Nonetheless, after re-
ceiving reports from teachers, the School District suspended John for do-
ing so, citing the proviso, and threatened to expel him if he continued.
A176.

In September 2024, John's parents decided to withdraw John from
Cane Bay because of the school's refusal to permit John to use boys' re-
strooms, combined with peer harassment exacerbated by the proviso.
A176. John then enrolled in an online school, which offered fewer educa-
tional and social opportunities than Cane Bay. A176-177. He became in-
creasingly academically disengaged and socially isolated. A176-177. As a
result, John stopped attending school. A179. In January 2025, the online

---

[1] The district court granted John's motion to proceed under pseudonym.
*See* Dist. Ct. ECF No. 25.

school withdrew John because of these absences. A179. John's parents then homeschooled John for the remainder of the 2024-2025 school year using an online curriculum. A283. Homeschooling was "no replacement for the educational and social opportunities of attending a public school in person." A283.

Since leaving the School District, John has wanted to return, if only he could use the boys' restrooms. A172-173. John and his parents therefore faced an "impossible" choice for the coming school year. A284. John's parents are "desperate" for him to return to in-person education, given its social and academic benefits. A284. But so long as the proviso is in effect, John will face "intolerable discrimination" at school, including suspension or expulsion for using boys' restrooms. A284. After multiple family discussions, John and his parents have made the "heart-wrenching" decision to re-enroll him in a School District high school for the 2025-2026 academic year, which starts August 13. A284.

## II. Procedural Background

On November 12, 2024, John filed this lawsuit along with the Alliance for Full Acceptance ("AFFA"), a Charleston-based advocacy group, against the State of South Carolina, its Board of Education and

Department of Education, its Secretary of Education, the School District, and the School District's superintendent (collectively, "the government"). *See* A014-034. The case asserts that the proviso violates both Title IX and the Equal Protection Clause. A031-032. As soon as the case was docketed, John filed a motion for a preliminary injunction, as well as a motion to certify a class. *See* Dist. Ct. ECF No. 9; Dist. Ct. ECF No. 10. After discovery, those motions were fully briefed by the end of January 2025. *See* Dist. Ct. ECF No. 48; Dist. Ct. ECF No. 49. Months later, the school year ended—foreclosing John's hope of returning for eighth grade—and the court still had not ruled.

In early June, South Carolina renewed the bathroom ban for the new fiscal year starting July 1. *See* A285-286, A288, A290-291. So, John and AFFA sought a status conference to discuss, before that date, how the district court would like the parties to proceed given this legislative development. *See* Dist. Ct. ECF No. 80. When the court had not ruled on that motion by the last week of June, the plaintiffs sought leave to amend their complaint to reflect the renewal of the law. *See* Dist. Ct. ECF No. 85. In a separate motion, John also proposed two paths for resolution of the pending motion for a preliminary injunction before the rapidly

approaching start of the new school year: John could amend his motion to reflect the extension of the ban and the parties could submit supplemental briefing, or John could file a renewed motion for a preliminary injunction and the parties could engage in full expedited briefing. *See* Dist. Ct. ECF No. 86. When, on July 1, the new fiscal year started, and still without guidance from the Court, John then filed a renewed motion for a preliminary injunction. Dist. Ct. ECF No. 88.

On July 8, the district court *sua sponte* stayed the case "until the Supreme Court enters an order on the merits in [*West Virginia v.* *B.P.J.*,"—a case about transgender students' participation in athletics— "or the Supreme Court's October 2025-June 2026 term ends, whichever is sooner." A295. In the same order, and in a subsequent entry, the Court then "denied without prejudice" "[a]ll pending motions . . . with leave to restore and/or supplement" once the stay lifts. A295-296.

The next day, John noticed this appeal. A297-298. On July 10, John filed a motion for an injunction pending appeal with the district court, asking for a decision by July 15 at 1:00 pm. Dist. Ct. ECF No. 95. The district court has not ruled on that motion.

8

## LEGAL STANDARD

As with a preliminary injunction, a plaintiff is entitled to an injunction pending appeal if he is "likely to succeed on the merits," he would be "irreparably harmed" absent an injunction, and the balance of equities and public interest favor an injunction. *Tandon v. Newsom*, 593 U.S. 61, 64 (2021); *accord Grimmett v. Freeman*, No. 22-1844, 2022 WL 3696689, at *1-2 (4th Cir. Aug. 25, 2022); *see also Wise v. Circosta*, 978 F.3d 93, 111 (4th Cir. 2020) (Wilkinson, J. and Agee, J., dissenting) (citing cases).

## ARGUMENT

John meets each of the requirements for an injunction enjoining the government's enforcement of, and compliance with, the proviso's restroom provision. Under *Grimm*, the ban violates both Title IX and the Equal Protection Clause. The proviso inflicts irreparable harm on John because it violates his civil rights and inflicts grave dignitary, emotional, and educational injuries that money alone could not cure. And, because the government cannot point to any state interest that justifies those harms, the balance of equities and public interest strongly favor an injunction.

9

## I.    John is likely to succeed on the merits of his claims

John contends that the government's continued enforcement of, or compliance with, the proviso with respect to his and other transgender students' access to school restrooms would violate Title IX and the Equal Protection Clause. A031-033. Based on a straightforward application of *Grimm*, John has shown a strong likelihood of success on the merits. Indeed, his victory is far more certain than is required to satisfy this element of the injunction-pending-appeal standard. *See Tandon*, 593 U.S. at 64; *see also League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) ("While plaintiffs seeking preliminary injunctions must demonstrate that they are likely to succeed on the merits, they need not show a certainty of success." (citation modified)).

### A. The proviso's restroom provision violates Title IX

John has a strong likelihood of success on his Title IX claim against the State of South Carolina, the State Board of Education, the State Department of Education, and the School District (the "government institutions") because all are subject to Title IX and the proviso is nearly identical to the policy *Grimm* held violated Title IX.

10

1. An entity is subject to Title IX if it "operates an education program or activity which receives [federal financial] assistance." *Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104, 127 (4th Cir. 2022) (en banc). This includes entities that "control[] and manage[]" funding recipients. *Horner v. Ky. High Sch. Athletic Ass'n*, 43 F.3d 265, 272 (6th Cir. 1994); *accord B.P.J. ex rel. Jackson v. W. Va. State Bd. of Educ.*, 98 F.4th 542, 554 (4th Cir. 2024), *cert. granted sub nom.*, *West Virginia v. B. P. J.*, 2025 WL 1829164 (2025) (No. 24-43).

All four government institutions fall within the statute's reach. At a minimum, the State Department of Education and the School District are themselves federally funded education programs or activities. *See* 20 U.S.C. § 1687 (defining a covered "program or activity" to include state and local departments and agencies as well as any "school system"); S.C. Code Ann. § 59-3-30 (1976) (providing that the State Superintendent of Education, through the Department, administers the state school system and manages funds provided by the State and federal government); A086-089 (demonstrating the State Department of Education receives federal funding); A082 (demonstrating the School District receives federal funding). The State operates its Department of Education. And the State and

11

State Board of Education control or manage public schools. *See, e.g.*, S.C. Code Ann. § 59-5-65 (1976) (providing that the State Board sets policy that governs the State's public schools and detailing the Board's other oversight responsibilities).

2. Given that the government institutions are subject to suit under Title IX, the only remaining question is whether, "on the basis of sex," the proviso "exclude[s]" students from, "denie[s] [them] the benefits of," or "'subject[s] [them] to discrimination" in school. 20 U.S.C. § 1681(a). It does.

*Grimm* held that a school discriminates based on sex in violation of Title IX when it forbids transgender students from using restrooms consistent with their gender identities. *See* 972 F.3d at 616-19. There, a transgender student, Gavin Grimm, brought a Title IX claim challenging his school's requirement that students use restrooms corresponding to their "biological gender[]" assigned at birth—a policy that excluded him from using the boys' restroom. *Id.* at 598-601. "Unlike the other boys, he had to use either the girls restroom or a single-stall option." *Id.* at 618. The Fourth Circuit concluded that, because Grimm was excluded from boys' restrooms because of his "'biological gender' . . . his sex [was] a but-

12

for cause for the [school's] actions." *Id.* at 616-17. And, because he is transgender, that exclusion caused Grimm physical, educational, emotional, and dignitary harms. *Id.* at 617-18. Accordingly, the challenged policy violated Title IX. *Id.* at 619.

So too here. John has offered evidence to show that the proviso—as enforced by the government institutions—denies transgender students like him access to restrooms corresponding to their gender identities, and that he, like other transgender students, is suffering injuries as a result. *See supra* pp. 2-6. That is enough to show the requisite likelihood of success on his Title IX claims in this Court.

## B. The proviso's restroom provision violates the Equal Protection Clause

1. John is also likely to succeed on his constitutional claim. Under the Equal Protection Clause, a state may not discriminate based on sex or gender identity unless it satisfies heightened constitutional scrutiny—that is, unless the sex or gender-identity-based distinction is "substantially related to a sufficiently important governmental interest." *Grimm*,

972 F.3d at 608. The burden to justify such a law "rests entirely on the State." *United States v. Virginia*, 518 U.S. 515, 533 (1996).

To meet that burden, the government must establish an "exceedingly persuasive justification" for the discrimination. *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982). The bar is high: government defendants' reasons must be "genuine," not a "*post hoc*" "response to litigation." *Virginia*, 518 U.S. at 533. And the defendants must "present[ ] sufficient probative evidence" to support those reasons—evidence that shows the challenged distinction "rests on evidence-informed analysis rather than on stereotypical generalizations." *H.B. Rowe Co. v. Tippett*, 615 F.3d 233, 242 (4th Cir. 2010).

2. *Grimm* held that a policy materially identical to the proviso was subject to heightened scrutiny for two "independent[ ]" reasons: It discriminated based on both sex and transgender status. 972 F.3d at 607, 613. *First*, the Court held that, because the policy determined "'which bathroom a student may use based upon the sex listed on the student's birth certificate,' the policy necessarily rest[ed] on a sex classification." *Id.* at 608 (quoting *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017)). That alone was enough to

14

trigger heightened scrutiny. *Second*, *Grimm* held that the policy—which excluded transgender boys from spaces non-transgender boys could access, and likewise for transgender girls—discriminated against transgender people, who constitute "a quasi-suspect class." 972 F.3d at 611.

So too here. Like the policy in *Grimm*, the proviso requires schools to designate multi-occupancy restrooms for use "'only by members of one sex,'" "'determined by anatomy and genetics existing at the time of birth,'" and it "prohibits students of the opposite sex from using the same bathrooms." A070 (quoting Proviso 1.120). And like the policy in *Grimm*, the proviso excludes transgender students from restrooms (and other facilities) open to non-transgender students. A070-071. So, like the policy in *Grimm*, the proviso discriminates based on both sex and gender identity and triggers heightened constitutional scrutiny. *See* 972 F.3d at 607.

3. Per *Grimm*, the proviso's restroom ban fails heightened scrutiny because the government lacks "evidence" that it "substantially relate[s]" to an "important governmental objective[]." *H.B. Rowe Co.*, 615 F.3d at 242. As in *Grimm*, the question is not whether providing separate restrooms for boys and girls is constitutional. *See* 972 F.3d at 618 & n.17.

15

Instead, the issue is whether the government can justify the proviso's exclusion of transgender students like John from sex-specific restrooms that align with their gender identities. *See id*. It cannot.

*Grimm* held that excluding transgender students from gender-appropriate restrooms does not serve any "interest in protecting students' privacy." *Grimm*, 972 F.3d at 607, 613-14. To claim otherwise "ignores the reality of how a transgender child uses the bathroom: 'by entering a stall and closing the door.'" *Id*. at 613 (quoting *Whitaker*, 858 F.3d at 1052). Transgender children are no more likely to be "peeping tom[s]" than their peers. *Id*. at 614; *accord* A118. And they "are not any more likely to pose a threat to safety" or violate other students' privacy than are non-transgender students. A118.

Here, as in *Grimm*, the government does "not present any evidence that a transgender student . . . is likely to be a peeping tom, rather than minding their own business like any other student." 972 F.3d at 614; *see also* A118 (explaining no such evidence exists). As in *Grimm*, the government "cite[s] to no incident" to justify its supposed privacy concern. 972 F.3d at 614. And, as in *Grimm*, John had "used the boys restrooms . . . without incident" prior to enforcement of the ban. *Id*. at 614; *see* A170-

16

171. For all these reasons, the government's asserted justification for the proviso cannot satisfy heightened scrutiny, and John is likely to succeed on his constitutional claim.

### C. *Grimm* is binding precedent

Recently, the government asserted that *United States v. Skrmetti*, 145 S. Ct. 1816 (2025)—which addressed Tennessee's ban on certain medications to treat transgender minors' gender dysphoria—overruled *Grimm*. *See* Dist. Ct. ECF No. 83. That's wrong. A Supreme Court decision only abrogates a decision of this Court if the Supreme Court "specifically rejected the reasoning on which" the Fourth Circuit decision was based, *Qingyun Li v. Holder*, 666 F.3d 147, 150 (4th Cir. 2011), such that the two cases are "*impossible* to reconcile," *United States v. Hunt*, 123 F.4th 697, 702 (4th Cir. 2024). That is a "high bar." *Short v. Hartman*, 87 F.4th 593, 605 (4th Cir. 2023). *Skrmetti* does not come close to it: The decision is easy to reconcile with *Grimm*.

For starters, *Skrmetti* does not even mention Title IX, which is "broader" than the Equal Protection Clause in many respects, *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 256 (2009). So it does not affect *Grimm*'s Title IX holding. John is entitled to an injunction based on that

17

statutory claim alone. *See, e.g.*, *Roe v. Dep't of Def.*, 947 F.3d 207, 212, 234 (4th Cir. 2020) (affirming preliminary injunction because "Plaintiffs have demonstrated a likelihood of success o[n] the merits of at least one claim"); *see also Taylor v. Grubbs*, 930 F.3d 611, 619 (4th Cir. 2019) ("[W]hen a Supreme Court decision abrogates one portion of our rationale in a prior case but not another, the rationale not abrogated . . . binds future panels of this court.").

*Skrmetti* also does not conflict with *Grimm*'s Equal Protection holding. *First*, it does not conflict with *Grimm*'s holding that a ban like the proviso triggers heightened scrutiny because it classifies based on sex. *Skrmetti* held that the Tennessee law at issue classified medical treatments based not on sex but on their "*medical uses*." 145 S. Ct. at 1829. That reasoning does not apply to a restroom ban and so does not disturb *Grimm. See K.C. v. Individual Members of Med. Licensing Bd.*, 121 F.4th 604, 617, 621 (7th Cir. 2024) (holding that "assigning a bathroom based on a child's sex unquestionably" classifies based on sex even if a ban on gender-affirming care, like the one in *Skrmetti*, does not). Indeed, the government admits that policies like the proviso classify based on "biological sex." Dist. Ct. ECF No. 51.

18

*Second*, *Skrmetti* does not conflict with *Grimm*'s independent holding that a ban like the proviso triggers heightened scrutiny because it classifies based on transgender status. *Skrmetti* held that the medical regulation did not turn on transgender status for the same reason it did not turn on sex: It "regulate[d] a class of treatments or conditions" and did not exclude "a class of *persons*" based on their protected traits. *Skrmetti*, 145 S. Ct. at 1834 n.3. The bans in *Grimm* and the proviso do the latter: They exclude John and other transgender boys from restrooms open to non-transgender boys, and likewise for transgender girls. *See Grimm*, 972 F.3d at 610–13; Proviso 1.120(A)(3); Proviso 1.114(A)(3). And *Skrmetti* expressly declined to address whether classifying based on transgender status triggers heightened scrutiny, so did not and could not disturb *Grimm*'s holding that it does. *See Skrmetti*, 145 S. Ct. at 1832-33; *Grimm*, 972 F.3d at 610-13.

*Finally*, because *Skrmetti* did not apply heightened scrutiny to any law, let alone a law concerning restroom access, it leaves undisturbed *Grimm*'s conclusion that a restroom ban nearly identical to the proviso's failed under that standard. *See id.* at 613-15. So, like the ban in *Grimm*, the proviso's restroom ban violates the Equal Protection Clause.

19

## II.    The proviso's restroom provision will irreparably harm John absent an injunction pending appeal

John will be irreparably harmed without an injunction pending his appeal. A plaintiff suffers "irreparable harm" when his injuries are hard to quantify or when money will not fully cure them. *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994). The "irreparable harm factor is satisfied" when, as here, "there is a likely constitutional violation." *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021). The Court need go no further.

The record also demonstrates all the concrete ways John will suffer absent an injunction. The proviso has already caused him to lose a year of school. Last fall, under threat from the State, the School District suspended John and threatened to expel him if he tried to use the boys' restrooms again. *See, e.g.*, A070-071, A073, A076-077, A171-172. To avoid using the restroom, John often held his urine, which was so uncomfortable that he could not focus on his classes. *See* A172. The ban also spurred peer harassment. *See* A172. John was "so upset by the harassment and invasive monitoring of [his] restroom use at school that, sometimes, [he] could not even go to school." A172. To avoid the discrimination, John

20

withdrew from the School District and spent the rest of eighth grade trying to learn from home, isolated from peers and disengaged from his studies. *See* A172, A283.

Without relief from this Court, when John returns to school next month, he will again likely face discipline, including possible suspensions and even expulsion, for using boys' restrooms. That loss of educational opportunity would be an irreparable harm. *See*, *e.g.*, *C.G. ex rel. P.G. v. Saucon Valley Sch. Dist.*, 571 F.Supp.3d 430, 444 (E.D. Pa. 2021) ("[C]ompensation in money can never atone for deprivation of a meaningful education in an appropriate manner at the appropriate time."). And for as long as John can remain in the School District without an injunction, he will suffer the same dignitary, stigmatic, emotional, and physical harms the proviso imposed last year, which money alone cannot repair. *See, e.g.*, *Whitaker*, 858 F.3d at 1040-42, 1045-46 (holding that a restroom ban's impacts on a student's mental and physical health, and the stigma it imposed, were irreparable injuries); *see also Grimm*, 972 F.3d at 617-18 (explicating "[t]he stigma of being forced to use a separate restroom"). John therefore will suffer irreparable harm absent an injunction while his appeal proceeds.

## III. The balance of equities and public interest favor enjoining enforcement of the proviso's restroom provision

The balance of equities and public interest strongly favor an injunction. A government "is in no way harmed by issuance of a preliminary injunction which prevents [it] from enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by such an injunction." *Leaders*, 2 F.4th at 346. And unlike the proviso, the proposed injunction would not require the government to affirmatively do anything. In fact, enjoining enforcement of the proviso would free teachers and administrators to spend less time policing which restroom John uses so they can focus on teaching students. Moreover, upholding constitutional and civil rights is always in the public interest. *See, e.g.*, *id.* at 346. So, because John is likely to succeed on his claims, he satisfies this factor.

## IV. The Supreme Court's cert grant in *B.P.J.* does not undermine John's entitlement to an injunction

In denying John's motion for a preliminary injunction, the district court did not rule on its merits. *See* A292-295. Rather, it denied the motion because it believes that the Supreme Court may abrogate *Grimm* in the coming term. *See* A293. The Supreme Court, it noted, recently agreed to hear a case out of this Court, *West Virginia v. B.P.J.*, concerning a ban

22

on transgender youth participating in sports teams aligned with their gender identities. *See* A293 (citing *W. Va. v. B.P.J.*, 2025 WL 1829164 (2025) (No. 24-43)). The district court anticipated that "a decision of the United States Supreme Court in *B.P.J.* has the potential of bringing clarity and providing guidance." A293. For that reason, the district court *sua sponte* stayed this case, denied the preliminary injunction, and forbade John from renewing his motion until after the Supreme Court either decides *B.P.J.* or concludes its 2025-2026 term. A295; *see* A296.[2]

But the district court already has all the "guidance" it needed: *Grimm*, which entitled John to a preliminary injunction, and which courts in this circuit must follow unless and until it is abrogated.

"A decision of a panel of [the Fourth Circuit] becomes the law of the circuit and is binding . . . unless it is overruled by a subsequent en banc

---

[2] Below, the government sought not a stay but extra time to oppose the renewed motion for a preliminary injunction. Dist. Ct. ECF No. 90. It contended that John's renewed motion was "premature" because, in its view, it related to an amended complaint, reflecting the renewal of the proviso, which the district court had not yet granted John leave to file. *See id.* at 1. That is wrong for a few reasons, including the "relationship between the injury claimed in [John's] motion" (the continued threat of enforcement of the restroom ban) "and the conduct asserted in the complaint" (threatened and actual enforcement of the ban). *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997).

opinion of this court or a superseding contrary decision of the Supreme Court." *United States v. Collins*, 415 F.3d 304, 311 (4th Cir. 2005). Even when the Supreme Court "grant[s] certiorari" as to a controlling Fourth Circuit case, courts must still apply "the law of this circuit" unless and until the Supreme Court overturns it. *Bethlehem Mines Corp. v. Henderson*, 939 F.2d 143, 151 n.7 (4th Cir. 1991); *see Yong v. INS*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000) (explaining that "once a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision"); *McClellan v. Young*, 421 F.2d 690, 691 (6th Cir. 1970) (same); *Schwab v. Sec'y, Dep't of Corr.*, 507 F.3d 1297, 1298 (11th Cir. 2007) (explaining that "grants of certiorari do not themselves change the law," and so "must not be used by courts ... as a basis for granting a stay of execution that would otherwise be denied"). So, the district court erred in denying a preliminary injunction based on the grant of certiorari in *B.P.J.*

Besides, the Supreme Court's decision in *B.P.J.*, which does not concern access to restrooms, is unlikely to abrogate *Grimm*—especially not in full. Even if, for example, *B.P.J.* holds West Virginia's athletics ban

24

can survive intermediate scrutiny, it will not abrogate *Grimm*'s holding that the restroom ban at issue there could not. *See supra* pp. 13-17.

Regardless, John cannot lose yet another school year while he waits for a decision in *B.P.J.* In the event *B.P.J.* abrogates *Grimm*, this Court, or the district court, can apply that new law when it comes down—including, if necessary, in revisiting any injunction. Today, however, John is entitled to relief, and he desperately needs it. The district court assumed that John would not "benefit[]" from an injunction if it were later "revers[ed] or modifi[ed]," A294, as any preliminary injunction may be. But *B.P.J.*'s resolution is a long way off. And every day the proviso is enjoined will be another day John can learn and grow at school without facing state-mandated discrimination. He will benefit each day he can focus in class because he does not need to hold his urine. *See* A172. He will benefit each day he is permitted on school grounds because he has not been suspended or expelled for using boys' restrooms. *See* A171-172. He will benefit each day he can enjoy equal access to education.

## V.     This Court should not require John to post a bond

Where the restrained party faces "no likelihood of material harm," courts may set a bond amount of zero. *Md. Dep't. of Hum. Res. v. U.S.*

*Dep't. of Agric.*, 976 F.2d 1462, 1483 n.23 (4th Cir. 1992). For that reason, the Court should not require John to post a bond. *See supra* p. 22 (discussing absence of harm to the government).

## CONCLUSION

The Court should grant John Doe's requested injunction pending appeal.

July 15, 2025                    Respectfully submitted,

                                /s/ *Alexandra Z. Brodsky*
                                Alexandra Z. Brodsky
                                Sean Ouellette
                                Adele P. Kimmel
                                PUBLIC JUSTICE
                                1620 L Street NW
                                Suite 630
                                Washington, DC 20036
                                (202) 797-8600
                                abrodsky@publicjustice.net
                                souellette@publicjustice.net
                                akimmel@publicjustice.net

                                Linda Correia
                                Andrew Adelman
                                Correia & Puth PLLC
                                1400 16th Street NW #450
                                Washington, DC 20036
                                (202) 602-6500
                                lcorreia@correiaputh.com
                                aadelman@correiaputh.com

Joseph J. Wardenski*
WARDENSKI P.C.
134 West 29th Street, Suite 709
New York, NY 10001
(347) 913-3311
joe@wardenskilaw.com
*Application for admission
forthcoming

Harper T. Segui
MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC
825 Lowcountry Boulevard
Mount Pleasant, DC 29464
(919) 600-5000
hsegui@milberg.com

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(a) and/or Circuit Rule XX because it contains 5,168 words. This motion complies with the typeface and typeset requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 in 14-point Century Schoolbook font.

Dated: July 15, 2025                    */s/ Alexandra Z. Brodsky*
                                        Alexandra Z. Brodsky
                                        *Counsel for Plaintiff-Appellant*