No. 25-1787

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JOHN DOE,
through his parents and next friends JIM DOE and JANE DOE,
*Plaintiff-Appellant*,

v.

STATE OF SOUTH CAROLINA, *et al.*,
*Defendant-Appellees*.

On Appeal from the United States District Court
for the District of South Carolina
Case No. 2:24-cv-06510
The Honorable Richard M. Gergel

## APPELLANT'S RESPONSE TO APPELLEES' MOTION TO
## DISMISS AND REPLY IN SUPPORT OF HIS
## MOTION FOR INJUNCTION PENDING APPEAL

Linda M. Correia
Andrew M. Adelman
CORREIA & PUTH PLLC
1400 16th Street NW #450
Washington, DC 20036
(202) 602-6500
lcorreia@correiaputh.com

Alexandra Z. Brodsky
Sean Ouellette
Adele P. Kimmel
Patrick Archer
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600
abrodsky@publicjustice.net

Counsel for Plaintiff-Appellant
*Additional Counsel on Next Page*

Leila Nasrolahi
PUBLIC JUSTICE
475 14th Street, Suite 610
Oakland, CA 94612
(510) 622-8150
lnasrolahi@publicjustice.net

Joseph J. Wardenski
WARDENSKI P.C.
134 West 29th Street, Suite 709
New York, NY 10001
(347) 913-3311
joe@wardenskilaw.com

Harper T. Segui
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC
825 Lowcountry Boulevard
Mount Pleasant, SC 29464
(919) 600-5000
hsegui@milberg.com

## INTRODUCTION

John Doe is before this Court asking for relief from an illegal South Carolina law before school starts on August 13. The government attempts to kick up dust by moving to dismiss the appeal for lack of jurisdiction—even though half its arguments in support do not even go to jurisdiction. It also tries, unpersuasively, to distinguish this case from this Court's controlling precedent in *Grimm v. Gloucester County School Board*, 972 F.3d 586 (4th Cir. 2020). Neither tactic works. This Court should deny the government's motion to dismiss and grant John's motion for an injunction pending appeal.

## ARGUMENT

### I.   The Court has jurisdiction over this appeal

#### A. This Court has jurisdiction to review the district court's orders denying the requested preliminary injunctions

1. This Court has jurisdiction under 28 U.S.C. § 1292(a)(1), which expressly grants jurisdiction over "interlocutory orders" "refusing" "injunctions." That "statutory mandate" leaves no room to decline to review orders that fit its description. *NationsBank Corp. v. Herman*, 174 F.3d 424, 427 & n.1 (4th Cir. 1999). It gives parties the right to appeal both 1) orders that expressly deny preliminary injunctions and 2) orders that

have the same "practical effect." *Abbott v. Perez*, 585 U.S. 579, 594 (2018). The district court's orders at issue are appealable for both reasons.

1a. *Express denial.* Section 1292 makes "clear that an order denying a preliminary injunction is an appealable interlocutory order." *Doe v. Charleston Area Med. Ctr., Inc.*, 529 F.2d 638, 641 n.5 (4th Cir. 1975). So when an order "'expressly . . . denies a request for injunctive relief,'" "the order is immediately appealable as of right under § 1292(a)(1)." *Morgenstern v. Wilson*, 29 F.3d 1291, 1294-95 (8th Cir. 1994) (collecting cases). The district court's orders both said that "all pending motions . . . are denied," and specifically cited John's renewed motion for a preliminary injunction. A295-296. A denial does not get more "express" than that.

1b. *Same practical effect.* Because the orders expressly deny the preliminary injunction, the Court need go no further to confirm its jurisdiction. But to entertain the government's counterfactual: Even if the district court had not expressly denied the preliminary injunction, this Court would still have jurisdiction to review its order.

"Appellate courts have jurisdiction to review interlocutory orders that have the practical effect of refusing an injunction." *A.A.R.P. v. Trump*, 145 S.Ct. 1364, 1367 (2025) (citation modified); *accord Abbott*,

585 U.S. at 594. This Court has held, for example, that an "indefinite continuance" of a hearing on a motion for a preliminary injunction "amounted to the refusing of an injunction and is appealable as such." *Cedar Coal Co. v. United Mine Workers of Am.*, 560 F.2d 1153, 1161 (4th Cir. 1977). And the Supreme Court recently reaffirmed that "[a] district court's inaction in the face of extreme urgency and a high risk of serious, perhaps irreparable, consequences may have the effect of refusing an injunction," and so may be appealable. *A.A.R.P.*, 145 S.Ct. at 1367 (citation modified). So, a plaintiff may appeal a district court's refusal to decide a motion for a preliminary injunction "until after [a] stay is lifted" when that postponement threatens irreparable harm. *Procter & Gamble Co. v. Kraft Foods Glob., Inc.*, 549 F.3d 842, 846 (Fed. Cir. 2008); *see also Forest Guardians v. Babbitt*, 174 F.3d 1178, 1185 (10th Cir. 1999) (holding that order denying injunction pending stay was appealable as both express and practical denial).

Here, even if the district court had not expressly denied the motion for a preliminary injunction, its orders would have had the practical effect of doing so because they deny John and the putative class urgent relief for the foreseeable future. Without an injunction, John and other

3

transgender students will suffer all the dignitary, psychological, educational, and physical harms that come from the ban when they soon return to school. *See* ECF No. 14-1 at 20-21 ("Doe Mot."); *Grimm*, 972 F.3d at 597, 617-18. And, though the district court labeled its denial as "without prejudice," it has forbidden John from renewing his request until the Supreme Court decides a different case or its upcoming term ends next summer. A295. Absent relief from this Court, then, John and other transgender students will suffer these injuries for most or all of the upcoming school year. This Court has jurisdiction to prevent such irreparable harm under § 1292(a)(1). *See Hoots v. Pennsylvania*, 639 F.2d 972, 979 (3d Cir. 1981) (holding preliminary injunction denial "without prejudice" was appealable because it "had serious, if not irreparable consequences" for children who would "have to wait another year before enrolling in racially integrated schools").

The government is flat wrong (at 11-12) that John will not be injured absent an injunction. This Court has already held that the availability of a single-stall, gender-neutral restroom does not shield transgender students from the injuries caused by a ban like the proviso. *Grimm¸* 972 F.3d at 617-18; *see* A238-240 (same, from John's expert). And

even if an injunction is later reversed or modified, John and other transgender students will benefit from equal access to education in the interim. *See* Doe Mot. 25.

2. The government's position is that the district court did not really deny the requested preliminary injunction, either "explicitly or effectively," because it denied it "without prejudice" and did not reach the merits. ECF No. 36-1 ("Gov't Mot.") at 6. But § 1292(a)(1) makes no exception for orders that deny preliminary injunctions "without prejudice." Courts, including this one, exercise jurisdiction to review such orders. *See, e.g.*, *Frazier v. Prince George's Cnty.*, 86 F.4th 537, 543 (4th Cir. 2023); *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1360 (Fed. Cir. 2016). Indeed, this Court held that it has jurisdiction to review an order denying an injunction where the district court planned to revisit and "fully consider" the key merits issue underlying the motion within a few months. *Everett v. Pitt Cnty. Bd. of Educ.*, 678 F.3d 281, 288 (4th Cir. 2012).

That the district court's orders did not address the merits of John's motion for a preliminary injunction does not matter. This Court has

jurisdiction to review the denial of a preliminary injunction even when the lower court offers "no explanation at all." *Frazier*, 86 F.4th at 545.

In arguing the district court's denials are not denials, the government only cites one Fourth Circuit case, *International Nickel Co., Inc. v. Martin J. Barry, Inc.*, 204 F.2d 583 (4th Cir. 1953). But that was an appeal from a stay with no pending request for a preliminary injunction. *See id.* at 585-86. It offers no insight into when an order effectively denies such a request.

The government's two out-of-circuit cases do not help its cause. The first, an unpublished decision, does not concern a preliminary injunction at all. *See Bryant v. McLean*, No. 24-1123, 2024 WL 3963962, at *1 (10th Cir. May 10, 2024) (explaining the district court granted "motions to dismiss" a litigant's "claim for injunctive relief"). In the other, "the District Court did not expressly deny Plaintiffs' motion for a preliminary injunction." *Def. Distributed v. Att'y Gen. of N.J.*, 972 F.3d 193, 198 (3d Cir. 2020). In concluding the order was not "a practical denial of" an injunction, the Third Circuit contrasted the case before it to those, like John's, "where the plaintiff would sustain an indisputable irreparable harm without immediate intervention." *Id.* at 199 & n.6. Besides, if that case

6

held that a decision to delay granting a preliminary injunction is categorically unappealable, it would be wrong and conflict with this Court's precedent. *See supra* pp. 2-3.

As this Court has observed, "[i]f something looks like a duck, walks like a duck, and talks like a duck, and the district court determine[d] it to be a duck, it is not our place on review to call it something else." *Lane v. United States*, 286 F.3d 723, 730 (4th Cir. 2002). The district court said it denied John's renewed motion for a preliminary injunction, and its order had the effect of denying that motion, so it denied the motion. This Court has jurisdiction to review that denial.

3. The government says (at 10) that an order that has the practical effect of denying an injunction is only appealable if it also 1) might cause serious harms and 2) necessitates an immediate appeal. Recently, the Supreme Court has treated these two conditions as part of the analysis of whether the order has the requisite practical effect, rather than as separate requirements. *See, e.g.*, *A.A.R.P.*, 145 S.Ct. at 1367. Regardless, John satisfies them. *See supra* pp. 3-5.

7

## B. John's earlier motion for a preliminary injunction does not divest this Court of jurisdiction

The government argues (at 6-7) that the Court lacks jurisdiction because, it says, John's original motion for a preliminary injunction is still pending below. For this proposition, the government does not cite a single case. This Court has rejected a similar argument. *See* Order, *Carcaño v. Cooper*, No. 16-1989 (4th Cir. Dec. 6, 2016), ECF No. 91 (denying motion to dismiss for lack of jurisdiction); Mot. to Dismiss, *Carcaño v. Cooper*, No. 16-1989 (4th Cir. Oct. 18, 2016), ECF No. 44 (arguing the court lacked jurisdiction because another preliminary injunction motion was still pending below).

Besides, the orders on appeal denied "all pending motions," which necessarily includes John's original motion for a preliminary injunction. A295-296. And in denying John's motion for an injunction pending appeal, the district court made clear it has no intention to grant any relief before its stay expires. *See* Dist. Ct. ECF No. 103.

## C. The requested injunction relates to the operative complaint

1. The government is also wrong (at 7-9) that the Court lacks jurisdiction to enjoin defendants from enforcing the state's restroom ban

because the injunction would not relate to the claims in John's operative complaint, which cited last year's (identical) iteration of the ban. That objection does not concern jurisdiction. It goes, instead, to the propriety of interim injunctive relief. *See Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997). And such relief is proper so long as the movant can "establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Id.*

John can do so. His renewed motion for a preliminary injunction and his original complaint challenge the same unlawful conduct by the government: "forbidding Plaintiff John Doe and the Class from using restrooms that correspond to their gender identities." A031 (Title IX claim); *accord* A032 (Equal Protection claim); Dist. Ct. ECF No. 88 at 1-2 (requesting that the Court enjoin "any . . . rule, policy, or practice that prohibits transgender students from using sex-specific school restrooms consistent with their gender identities"). That conduct will cause the harms identified in his motion. *See* Dist. Ct. ECF No. 88-1 at 28-31.

That the ban is now called Proviso 1.114 rather than 1.120 does not sever that relationship. After all, a claim for injunctive relief does not seek to enjoin the "challenged laws themselves"; it seeks to "enjoin named

9

defendants from taking specified unlawful actions." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021) (citation modified). Because John challenges the same unlawful action across his filings, he did not need to name Proviso 1.114 in his complaint. *See Al Otro Lado v. Wolf*, 952 F.3d 999, 1006 n.6 (9th Cir. 2020) (enjoining enforcement of rule not specifically "challenged in [the] operative complaint" because it was part of the "practice" the complaint challenged). John's request for relief is nothing like the one in the government's cited Fourth Circuit case. There, the plaintiff sought interim relief "not only unrelated, but directly contradictory to, the injury for which" it sought "redress in the underlying complaint." *Omega World Travel, Inc.*, 111 F.3d at 16.

2. If the Court nonetheless agrees that John must amend his complaint to support his renewed motion for a preliminary injunction, it should exercise pendent jurisdiction to reverse the district court's denial of his motion to amend. *See Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 111 (4th Cir. 2013) (explaining that pendent appellate jurisdiction is available "when review of a jurisdictionally insufficient issue is necessary to ensure meaningful review of an immediately appealable issue or the two issues are inextricably intertwined" (citation modified)). In June,

10

after the government renewed the ban, John moved to amend his complaint to reflect that renewal. Dist. Ct. ECF No. 85. The district court abused its discretion when it denied that motion. Denial of leave to amend is appropriate "*only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999). None of those factors were present here. Yet the district court denied John's motion to amend for the same reason it denied his motion for a preliminary injunction: the Supreme Court's cert grant in *B.P.J.* A295-296. That grant does not bear on John's right to amend his complaint. So the district court erred in denying his motion to do so. If necessary, this Court should reverse.

### D. The scope of requested relief does not divest this Court of jurisdiction

The government contends that John's renewed motion for a preliminary injunction was not "operative" because, in its view, the relief sought by that motion was too broad. Gov't Mot. 9. But the government does not explain how that would make the motion "[in]operative" or require the Court to dismiss the case. Why would it? Those questions may inform the

11

ultimate relief the Court orders, but they do not prevent the Court from hearing the appeal.

Besides, the requested injunction is not overbroad. Courts regularly enjoin future iterations of a challenged policy or practice. *See, e.g.*, *PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111, 127-28 (4th Cir. 2011) (affirming injunction preventing defendant from making "the same or similar claims in different advertisements in the future"). That is especially appropriate here because the proviso is subject to annual renewal. And John has asked the Court to enjoin non-parties only as authorized by federal rules. *Compare* Fed. R. Civ. P. 65(d)(2) (ordering that an injunction binds parties, their "officers, agents, servants, [and] employees," and "other persons who are in active concert or participation" with the parties) *with* Dist. Ct. ECF No. 88 (moving for injunction). The case the government cites, *Trump v. CASA, Inc.*, is inapposite. *See* 145 S.Ct. 2540, 2550-54 (2025) (holding courts have limited power "to grant relief to nonparties," not to *enjoin* nonparties).

### E. John has standing and his claims are not moot

1. "At the preliminary injunction stage," a plaintiff need only show that he is "likely" to establish standing. *Murthy v. Missouri*, 603 U.S. 43,

58 (2024). The same is true on a motion for an injunction pending appeal. *See, e.g.*, *Missouri v. Biden*, 112 F.4th 531, 536 (8th Cir. 2024). "[S]tanding is to be determined as of the commencement of suit." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 570 n.5 (1992). So, John need only show he is likely to establish that, when he filed suit, he had an "injury in fact" that was "'likely caused by the defendant'" and would "likely be redressed by judicial relief." *Diamond Alt. Energy, LLC v. Env't Prot. Agency*, 145 S.Ct. 2121, 2133 (2025).

John had standing when he filed this case in November 2024. A034. Then, he had recently left his public school because his school barred him from boys' restrooms based on the proviso. A176-177. He was struggling to learn through an online program that offered limited live instruction, left him academically disengaged, and isolated him from peers. A176-177. That loss of educational opportunity was an injury in fact. *See Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 187-89 (4th Cir. 2018) (holding student who withdrew from a public school because of its unlawful Bible education program had standing to sue to enjoin the program because she had to attend a different school to avoid it); *A.C. ex rel. M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 772 (7th Cir. 2023) (noting

13

"remote schooling" is "not a true alternative" to the "opportunity to socialize with and learn alongside" classmates in person); *Smith v. Albany Cnty. Sch. Dist. No. 1 Bd. of Trs.*, 121 F.4th 1374, 1379 (10th Cir. 2024) (similar).

The loss was caused by the government and redressable by an injunction: John left school because of the restroom ban, and he testified that he would return if the ban were enjoined. A172-173; *see Deal*, 911 F.3d at 189-90 (holding injunction would redress a student's injury because it would allow her to return to school without enduring a rights violation).

The government tries to "incorporate [its] standing arguments raised to the district court" regarding John's standing "at the time of the Complaint." Gov't Mot. 13. That is not allowed. *See, e.g.*, *McCarver v. Lee*, 221 F.3d 583, 588 n.1 (4th Cir. 2000); 16AA Wright & Miller's Federal Practice & Procedure § 3974.5 (5th ed.). The government has therefore forfeited those arguments.

2. If this Court reverses the district court's denial of John's motion to amend his complaint, *see supra* Part I.C, John's ability to sue would turn on his standing at the time of his amendment. *See Rockwell Int'l*

*Corp. v. United States*, 549 U.S. 457, 473-74 (2007). John can likely establish standing then, too. The School District has previously enforced the proviso against John and has threatened to continue to enforce it. A171-172. It did so under threats from the state that it will pull funding from schools that do not enforce the proviso. A070, A073, A077. That past and threatened enforcement demonstrates that John is likely to be punished again when he returns to the School District and uses the boys' restrooms. *See Kenny v. Wilson*, 885 F.3d 280, 288 (4th Cir. 2018) ("[P]ast enforcement . . . is good evidence that the threat of enforcement is not chimerical."). John is also likely to experience other harms he faced at school last year, including stigma, invasive monitoring, and distraction during class when he is forced to hold his urine. A172; *Grimm*, 972 F.3d at 617-18. Those injuries are caused by the government's enforcement of the ban and would be redressed if the Court enjoined that enforcement.

3. The government says that John lacks "standing" because, after he filed his complaint, the state replaced Proviso 1.120 with a new, identical restroom ban, Proviso 1.114. But "[i]t is the doctrine of *mootness*, not standing, that addresses whether an intervening circumstance"—like the replacement of a challenged statute—has "deprive[d] the plaintiff of a

15

personal stake in the outcome of the lawsuit." *West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 719 (2022) (citation modified); *see Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993). To show that a once-live case is moot, the defendant has the "heavy burden" to show it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

A defendant cannot meet that burden "by repealing the challenged statute and replacing it with one that differs only in some insignificant respect." *Associated Gen. Contractors*, 508 U.S. at 662. So long as the new law affects the plaintiff "in the same fundamental way," the case is not moot. *Id.* Because Proviso 1.114 requires the government to implement precisely the same restroom ban under a different name, John's claims are not moot.

The same goes for the government's assertion (at 13) that John lacks standing—really, that his claims are moot—because his original complaint did not specifically allege facts about the 2025-2026 school year. For example, the government faults him for not alleging last

November that, during this coming school year, he would continue to live within the Berkeley County School District and continue to be transgender. Come on. As explained, it is the government's heavy burden to demonstrate that an intervening circumstance has deprived John of a personal stake in the outcome of the lawsuit. *See supra* pp. 15-16. And the government points to nothing suggesting that John's family has moved, or that, after identifying as a boy his entire life, John is suddenly no longer transgender. *See* A169-170.

Plus, when courts assess mootness, they may consider evidence outside the complaint. *See, e.g.*, *Cedar Coal*, 560 F.2d at 1166 (considering affidavits to assess mootness). And the record shows that John's family has not moved, that he remains a transgender boy, and that he intends to attend a School District high school this fall and use boys' restrooms. A300-301. John's claims are not moot.

## II.   The Court should grant an injunction pending appeal

### A.  John is likely to succeed on the merits of his claims

1. The government tries to wish away *Grimm*, which controls the merits of John's case. The government argues that the two cases are "distinguishable" because of "factual and procedural distinctions." Gov't Mot.

17

14. It points to no procedural differences and does not explain why either of the facts it highlights matter. For example, the government notes the *Grimm* plaintiff had been diagnosed with gender dysphoria and his doctor had "identified using the boys' restrooms as part of the appropriate treatment." *Id.* But this Court has never required such a formal diagnosis or plan for a transgender student's rights to attach. *Grimm* explicitly noted that "not all transgender persons have gender dysphoria," yet held that disparate treatment of transgender students is statutory sex discrimination and is subject to heightened scrutiny. 972 F.3d at 612-13, 619.

2. The government claims that *Grimm* did not consider certain "new arguments" it makes here. Gov't Mot. 15. A precedent's binding effect "does not disappear just because a future litigant identifies a fact, theory, or line of argument the previous panel could have but did not consider." *Gibbons v. Gibbs*, 99 F.4th 211, 213 (4th Cir. 2024). In any case, *Grimm* addressed and rejected the government's principal "new" argument that a claim like John's is not "true discrimination" because schools may sex-segregate restrooms. 972 F.3d at 618.

The government also asserts it has identified a "different" state interest not raised in *Grimm*: "protect[ing] the safety and privacy of [transgender] students." Gov't Mot. 15. The government cannot justify the proviso based on this "interest" because it impermissibly "invented [it] *post hoc* in response to litigation." *United States v. Virginia*, 518 U.S. 515, 533 (1996). The government cites no evidence that this alleged concern motivated the proviso, and none exists.

Even if this purported justification were available, it would not help the government. *Grimm*'s Title IX holding does not turn on a government interest, so John would still be entitled to relief on his statutory claim. *See* 972 F.3d at 616-19. For John's constitutional claim, the proviso bears no evidence-based relationship to this supposed interest—either generally or as applied to John—and so still could not satisfy intermediate scrutiny. *See* A238-242.

3. The government argues that *Grimm*'s precedential value has been diminished by a "changed" "scientific and legal landscape." Gov't Mot. 16. The medical standards the government cites remain a reputable source of scientific information. *See* A100, A232-233. Regardless, *Grimm*'s reasoning did not rely on them. *See* 972 F.3d at 606-20. Nor does

19

it matter for John's case that, as the government notes (at 16 and 18-19), some other courts in other circuits have disagreed with *Grimm*. In the absence of en banc reconsideration or abrogation by the Supreme Court, *Grimm* remains binding precedent in the Fourth Circuit. *See United States v. Collins*, 415 F.3d 304, 311 (4th Cir. 2005). And the government does not argue, as it did below, that *United States v. Skrmetti*, 145 S.Ct. 1816 (2025), abrogated *Grimm*.[1]

4. Putting aside its unpersuasive efforts to distinguish *Grimm* and question its continued power, the government does not have much to say about John's claims. It offers no analysis at all of John's constitutional claim. The closest it comes is asserting without explanation that the proviso survives rational basis review, citing to a "discuss[ion] above" that does not exist. Gov't Mot. 19-20.

As to Title IX, the government discusses (at 17-18) its purported interest in the ban. But a Title IX claim does not turn on purportedly

---

[1] The government rightly does not argue that the Supreme Court order it cites (at 19), which declined to narrowstays of Title IX regulations, abrogated *Grimm*. *See Tirrell v. Edelblut*, 748 F.Supp.3d 19, 42 (D.N.H. 2024); *see also* Brief of State Respondents at 22, *Cardona v. Tennessee*, 603 U.S. 866 (2024) (No. 24A79) (describing limited scope of "[t]he controversy between the parties" at issue in Supreme Court order).

countervailing governmental interests. *See supra* p. 19. And *Grimm* has already rejected the government's suggestion that a ban like the proviso is permissible if a school makes available a single-stall alternative. *See* 972 F.3d at 617-18. Mischaracterizing the nature of John's claim will not get the government far, either: As John has made clear, he does not challenge the "practice of separating school bathrooms" based on sex, Gov't Mot. 17, but rather the exclusion of transgender students from restrooms that match their gender identities. *See* Doe Mot. 10. *Grimm* already held that exclusion violates Title IX. 972 F.3d at 616-19.

## B. The ban will likely irreparably harm John

1. John is likely to suffer irreparable harm absent an injunction pending appeal. The government does not dispute that "the irreparable harm factor is satisfied" when "there is a likely constitutional violation." *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021). Because this Court "has no discretion to deny relief" in these circumstances, *Henry v. Greenville Airport Comm'n*, 284 F.2d 631, 633 (4th Cir. 1960), it need not consider the government's other arguments.

2. Regardless, they are not persuasive. The government contends that John's harms are not "*caused*" by the ban because John faced harassment before the proviso was enacted. Gov't Mot. 20. John left school initially because of both his exclusion from boys' restrooms and the harassment, which was exacerbated by the restroom ban. A172. But even if he faces no future harassment attributable to the ban, the record shows that John will likely be excluded from boys' restrooms when he returns to school and face discipline for using them. *See supra* p. 15. The government cannot dispute the ban will likely cause those harms.

3. The government argues that John's harms are merely "hypothetical" because the record before the Court is "devoid of any information about [his new] school's bathroom layout, availability, accessibility, and practices." Gov't Mot. 20. But none of those details bear on John's injuries. The government does not dispute that it will enforce the proviso as threatened. And it is the ban, not the layout of the bathroom, that has caused and will continue to cause John harm. Likewise, whether the new school allows John to use single-occupancy restrooms is irrelevant: That option would not remedy the ban's harms. *See* 972 F.3d at 617-18.

22

4. The government is also wrong that John will not be harmed because he "finished a full year of school last year." Gov't Mot. 21. If the government's point is that John would not be injured if he is again forced out of school by the ban, that ignores the significant benefits of "attending a public school in person" that he would lose. A283; *see supra* pp. 13-14 (citing cases recognizing virtual learning is not a replacement for in-person education).

5. The government speculates that allowing John to use gender appropriate restrooms would "draw[] significant attention" to him rather than let him "blend in." Gov't Mot. 21. John's sworn declaration and Fourth Circuit precedent establish the opposite. A171 (noting that a "school principal had to intervene" because female classmates were "confused" by John's presence in the girls' restroom, given his masculine appearance); A170 (explaining using the nurse's restroom would "single [John] out" and "put a target on [his] back); *Grimm*, 972 F.3d at 617-18 (describing how forced separate restroom use "invite[s] more scrutiny and attention").

## C. The balance of equities and public interest favor an injunction

1. The balance of equities and public interest strongly favor an injunction. The government suggests (at 21) that it would suffer an irreparable injury if it were enjoined from effectuating its state laws. But a government "is in no way harmed by issuance of a preliminary injunction which prevents [it] from enforcing restrictions likely to be found unconstitutional." *Leaders*, 2 F.4th at 346. Instead, when a state law likely violates federal law, "the system is improved by such an injunction." *Id*. Because John is likely to succeed on his claims, *see supra* Part II.A, he satisfies this factor.

2. The Court can stop there. Regardless, the government's other arguments fare no better. The government does not provide any evidence (at 22) of religious students objecting to sharing restrooms with John, the only student the injunction pending appeal would protect.[2]

Nor does it provide evidence of student religious objections to sharing restrooms with transgender classmates generally: The single study

---

[2] John seeks an injunction pending appeal only on his own behalf, Doe Mot. 1-2, though, in his forthcoming opening brief, he will continue to challenge the denial of the preliminary injunction for the putative class.

24

its expert cites for this point is inapposite. *See* Dist. Ct. ECF. No. 38-3 at 29 (citing study discussing multi-occupancy gender-neutral restrooms, with no mention of religious beliefs about sharing sex-segregated restrooms with transgender people). And an injunction would not prohibit the School District from offering accommodations to religious students.

3. The government also provides no evidence that an injunction pending appeal would undermine "the privacy and safety" of transgender students. Gov't Mot. 22. Elsewhere in its brief, the government cites its putative expert's belief that transgender students might prefer single-occupancy restrooms because, she assumed, "they are likely at a heightened risk of . . . bullying" in single-sex restrooms that match their gender identities. *Id.* at 17-18. But John—again, the only student the injunction would protect—is not one of those students. A170. And an injunction would not prevent John from using single occupancy restrooms if he later prefers.

Plus, the government's expert admitted that no data support her assertion that transgender students face higher risks of harassment in gender-appropriate restrooms than elsewhere. A201-202. If there were

25

such evidence, excluding John from a communal space he wishes to use would not be an appropriate solution. A241-242.

4. As for the purported safety risks to non-transgender students, the government provides no evidence that John, who used boys' restrooms previously without any student complaint, would pose a threat to his classmates if allowed to do so again. *See* A171. Even apart from John, the government cannot identify one example of the "safety concern" it says would arise if the Court grants the injunction pending appeal. Gov't Mot. 22.

## CONCLUSION

The Court should deny the government's motion to dismiss and grant the injunction pending appeal.

26

July 31, 2025                    Respectfully submitted,

                               /s/ *Alexandra Z. Brodsky*
                               Alexandra Z. Brodsky
                               Sean Ouellette
                               Adele P. Kimmel
                               Patrick Archer
                               PUBLIC JUSTICE
                               1620 L Street NW
                               Suite 630
                               Washington, DC 20036
                               (202) 797-8600
                               abrodsky@publicjustice.net
                               souellette@publicjustice.net
                               akimmel@publicjustice.net
                               parcher@publicjustice.net

                               Leila Nasrolahi
                               PUBLIC JUSTICE
                               475 14th Street, Suite 610
                               Oakland, CA 94612
                               (510) 622-8150
                               lnasrolahi@publicjustice.net

                               Linda M. Correia
                               Andrew M. Adelman
                               Correia & Puth PLLC
                               1400 16th Street NW #450
                               Washington, DC 20036
                               (202) 602-6500
                               lcorreia@correiaputh.com
                               aadelman@correiaputh.com

Joseph J. Wardenski
WARDENSKI P.C.
134 West 29th Street, Suite 709
New York, NY 10001
(347) 913-3311
joe@wardenskilaw.com

Harper T. Segui
MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC
825 Lowcountry Boulevard
Mount Pleasant, SC 29464
(919) 600-5000
hsegui@milberg.com

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(a) because it contains 5,200 words.

This motion complies with the typeface and typeset requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 in 14-point Century Schoolbook font.

Dated: July 31, 2025          _/s/ Alexandra Z. Brodsky_
                             Alexandra Z. Brodsky
                             _Counsel for Plaintiff-Appellant_